LESTER FARRINGTON
*vs.*
EUGENE L. MERRILL

Oxford.   Opinion, February 11, 1955.

*Berman & Berman,*
*Neil L. Dow,*
*W. A. Trafton, Jr.,* for plaintiff.

*William E. McCarthy,*
*Peter M. McDonald,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, TIRRELL, BELIVEAU, TAPLEY, JJ.   WEBBER, J., did not sit.

TIRRELL, J.   This is an action to try the title to land and also for damages claimed for waste.

The writ was entered in the Superior Court at the November Term 1952 and at the June Term 1953 was referred with rights of exceptions reserved as to matters of law. On September 25, 1953 the report of the Referee was filed. At the November Term written objections to acceptance of the report of the Referee were filed. On motion of the plaintiff

report of the Referee was accepted and exceptions filed by the defendant. The report of the Referee is as follows:

"REPORT OF REFEREE

"This was an action to try the title to land described in Plaintiff's writ. Defendant in substance denies any title in the plaintiff and asserts title in himself gained through adverse possession. It may be said at the outset that the defendant has failed upon his evidence to establish any title in himself and the issue is thus narrowed to a determination as to whether there is title in the plaintiff.

"It is not in dispute that plaintiff shows a continuous chain of title to Lot 9 First Range, First Division of Lots on the east side of Ellis River, all in the Town of Andover in Oxford County and that said unbroken chain of title goes back to the Proprietors of the Town of Andover and their deed to a predecessor of plaintiff in 1813. The land in dispute here lies westerly of Lot 9 projecting toward but not reaching the Ellis River. Lot 9 itself is upland and the disputed area, likewise upland almost in its entirety, forms upon the face of the earth a sort of point or promontory roughly triangular in shape, surrounded upon its two outer sides by a bank, its point toward the Ellis River, and with most of its wide base abutting against the westerly line of so much of Lot 9 as was originally lotted by plan.

"In this case a review of ancient documents and records is enlightening. About 1794 the original Proprietors of Andover were in the process of lotting portions of the town. Their records, copies of pertinent portions of which are in evidence, disclose that one Enoch Adams, first record owner of this disputed land, successfully bid in the task of doing some of this lotting. These records further disclose that a committee was assigned to determine which of the lots as laid out by Mr. Adams should be considered first or second division lots.

On January 24, 1794 the Proprietors voted 'to extend the sidelines of the upland lots to the intervale through the skirts as they now run'; and voted further 'that each proprietor have his skirts lying between his lot and intervale.' It is apparent that the intent then was to recognize three types of land, upland lots which presumably would be arranged, laid out and plotted in a more or less regular manner, intervale, which seems to have been somewhat lower land lending itself to cultivation or improvement and which for the most part was to be also laid out and lotted, and that which was designated skirts, being land lying between the lotted upland and the lotted intervale and which no doubt was at that time considered of more doubtful value. It seems obvious that on January 24, 1794 the proprietors desired and intended to establish an ownership of what they termed skirts and in very direct language they added the skirts to the upland lotted land and provided for the extension of the lines of the lotted upland to include and embrace the skirts. In 1813 Enoch Adams became the first record owner of Lot 9 on east side of the river and the skirts which went with that lot, which skirts without any doubt included all of the land now in dispute. About 1845 a blueprint was prepared, which bears this legend: 'Andover, Maine. Traced from a plan compiled from unknown sources by Winslow Talbot for Sylvanus Poor, Esq., about 1845'. This plan discloses Lot 9 on the east side of the Ellis River as a rectangular lot marked 'E. Adams' and discloses unlotted land irregular in shape lying out along the westerly line of Lot 9. There was, however, produced for the inspection of the Referee an ancient document in the form of an old parchment plan of the same area on which very significantly the northerly and southerly sidelines of Lot 9 were extended westerly toward the Ellis River and as though to conform with the votes of the proprietors above referred to. It must be noted that in all the deeds comprising plaintiff's chain of record title Lot 9 is never described by reference to any recorded plan and

therefore is not limited as it might otherwise have been if a plan had been incorporated by reference in the description.

"I find, therefore, that Lot 9 from its very beginning was enlarged to include its skirts along its westerly line which in turn included all of the land here in dispute. Admittedly any owner of Lot 9 could have, by appropriate conveyance, severed the skirts or any part thereof from the rest of Lot 9, but the record discloses no such severance.

"In addition to the issue of title, the plaintiff seeks to recover damages for destruction and waste, and in support of that demand has shown that the defendant entered upon the land in dispute and cut valuable timber. I assess the value of the timber cut at Five Hundred and Seventy-five Dollars. Accordingly the plaintiff must have judgment for recovery of the premises described in his writ with damages as assessed for waste and his costs to be taxed by the Clerk.

"Dated this 9th day of September, 1953."

This above report of the Referee having been filed in the Superior Court, and the plaintiff having filed a motion for an allowance of the same, the defendant made written objections to the acceptance of the report. The written objections were overruled by the justice presiding. Thereafter a Bill of Exceptions was filed with the presiding justice which exceptions were allowed by him.

The plaintiff in his brief states that there are plans which were a part of the case below but which are not included here. This is borne out by the statement in the report of the Referee that an ancient parchment was presented to him for his inspection. We also note the fact brought out by the plaintiff in his brief that there was no reporter at the hearing before the Referee and that there were ten to twelve witnesses who testified as to damages, to the use of the plaintiff's predecessors in title of the land in dispute

and *to the description of the land* and its identity with that described in the writ, and to other facts material to the case.

The defendant in his brief, under the heading, "Statement of the Case," says: "Rehearsal of the *testimony* at this point would be of no value."

It is therefore apparent to this court that the defendant has failed to produce the complete record, and in particular, has failed to produce for our inspection a transcript of the oral testimony. The evidence here shows only the chain of title of the plaintiff and the town vote. The defendant's bill of exceptions does not include as a part thereof any transcript of the oral evidence before the Referee. The defendant has incorporated in his bill of exceptions by reference certain exhibits, but it nowhere appears in the bill of exceptions that these exhibits comprise the whole of the evidence or even that they comprise all of the evidence bearing upon the issues sought to be raised by the bill of exceptions. It is obvious that the findings of the Referee rested in part upon evidence, oral or otherwise, which is not now before us. Plaintiff's counsel in his brief suggests that there was no reporter present at the hearing before the Referee and no record of the oral testimony heard by the Referee was made. See *Bickford* v. *Bragdon,* 149 Me. 324.

The report of the Referee must be sustained and the exceptions of the defendant overruled on the ground that the defendant, he being the moving party, has failed to bring before us a sufficient record from which we can determine whether or not there was error. Neither the oral testimony nor the ancient parchment has been produced, as we have before said, by the defendant.

For these reasons the exceptions of the defendant are overruled.

*Exceptions overruled.*